UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
EASTERN DIVISION

| | |
|---|---|
| DAN LATHAM, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CIVIL ACTION NO.: |
| ) | 1:13-cv-1211-KOB |
| PRECISION STRIP, INC., et al., ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM OPINION**

This matter comes before the court on "Defendant Jeff Merritt's Motion to Dismiss Amended Complaint." (Doc. 23). Plaintiff's amended complaint alleges discrimination and retaliation claims against Defendants Precision Strip and Delilah Glover and a tortious interference claim against Defendant Jeff Merritt. For the following reasons, the court will DENY Defendant Jeff Merritt's motion to dismiss.

**I.    FACTS**

Prior to May 2012, Plaintiff Dan Latham worked as the Transport Supervisor at Precision Strip, Inc. in Talladega, Alabama. Defendant Jeff Merritt is the owner of a trucking company that does regular business with Precision Strip. On May 16, 2012, Plaintiff's superiors forced him to resign or face immediate termination. Plaintiff, a Caucasian, believes his forced resignation was part of a racist conspiracy to put an African-American in the position he previously held.

Plaintiff alleges that Abe Wills, a former co-worker at Precision Strip, told Plaintiff that, "while at a bonfire," Mr. Wills was approached by someone who knows Mr. Merritt. (Doc. 19, ¶ 51). That unidentified person informed Mr. Wills that Mr. Merritt was working on getting

1

Plaintiff fired because if Plaintiff was "out of the way," Human Resources Representative Delilah Glover and General Manager of the Talladega plant Nick Mormon would allow Mr. Merritt to increase his trucking loads at the Talladega plant. (Doc. 19, ¶ 52).

Previously, when Precision Strip management hired Plaintiff as Transport Supervisor, they selected him over Mr. Merritt for the position. After being denied the Transport Supervisor position, Mr. Merritt, who worked for Precision Strip in another capacity, quit the company and started his own trucking company. Precision Strip gave business to Mr. Merritt's company until it came to Plaintiff's attention that Mr. Merritt was sending emails to customers casting Precision Strip in a negative light. Plaintiff brought this report to the attention of Mr. Deron Goodwin—presumably Plaintiff's supervisor—and Mr. Goodwin reduced the number of loads that Mr. Merrit was allowed to carry for Precision Strip.

Since Plaintiff's forced resignation, he has learned that Mr. Merritt's trucks have been running at increased rates. Furthermore, Mr. Merritt has hired the niece of Defendant Glover. Plaintiff alleges that "Merritt intentionally interfered with Plaintiff's business relationship with Precision Strip by setting out to engineer Plaintiff's firing in order to improve Merritt's business prospects." Plaintiff also alleges that "Merritt's tortious interference with Plaintiff's relationship with Precision Strip has caused Plaintiff injury, loss, and damage." (Doc. 19, ¶ 79).

## II.   STANDARD OF REVIEW

A Rule 12(b)(6) motion to dismiss attacks the legal sufficiency of the complaint. Generally, the Federal Rules of Civil Procedure require only that the complaint provide "'a short and plain statement of the claim' that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47 (1957)

(quoting Fed. R. Civ. P. 8(a)).  A plaintiff must provide the grounds of his entitlement, but Rule 8 generally does not require "detailed factual allegations." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley*, 355 U.S. at 47).   It does, however, "demand[ ] more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal* 556 U.S. 662, 678 (2009).   Pleadings that contain nothing more than "a formulaic recitation of the elements of a cause of action" do not meet Rule 8 standards nor do pleadings suffice that are based merely upon "labels or conclusions" or "naked assertions" without supporting factual allegations. *Twombly*, 550 U.S. at 555, 557.

      The Supreme Court explained that "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting and explaining its decision in *Twombly*, 550 U.S. at 570).  To be plausible on its face, the claim must contain enough facts that "allow[ ] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.  Although "[t]he plausibility standard is not akin to a 'probability requirement,'" the complaint must demonstrate "more than a sheer possibility that a defendant has acted unlawfully." *Id.*   "Where a complaint pleads facts that are merely consistent with a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.*  (quoting *Twombly*, 550 U.S. at 557).

      The Supreme Court has identified "two working principles" for the district court to use in applying the facial plausibility standard.  The first principle is that, in evaluating motions to dismiss, the court must assume the veracity of *well-pleaded factual* allegations; however, the court does not have to accept as true legal conclusions even when "couched as [] factual

3

allegation[s]" or "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Iqbal,* 556 U.S. at 678. The second principle is that "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* at 679. Thus, under prong one, the court determines the factual allegations that are well-pleaded and assumes their veracity, and then proceeds, under prong two, to determine the claim's plausibility given the well-pleaded facts. That task is "context-specific" and, to survive the motion, the allegations must permit the court based on its "judicial experience and common sense. . . to infer more than the mere possibility of misconduct." *Id.* If the court determines that well-pleaded facts, accepted as true, do not state a claim that is plausible, the claim must be dismissed. *Id.*

## III. DISCUSSION

In his motion to dismiss, Mr. Merritt argues that the Plaintiff's amended complaint fails to state a claim as to two of the elements of tortious interference with a business relationship. Specifically, Mr. Merritt asserts that the amended complaint fails to allege that he was a stranger to the business relationship or that he intentionally interfered with the business relationship.

The Alabama Supreme Court has established—and the parties do not dispute—that the elements of a claim for tortious interference with a business relationship are: "(1) the existence of a protectible business relationship; (2) of which the defendant knew; (3) to which the defendant was a stranger; (4) with which the defendant intentionally interfered; and (5) damage." *White Sands Group, L.L.C. v. PRS II, LLC*, 32 So. 3d 5, 9 (2009).

First, Mr. Merritt contends that the amended complaint does not allege that he was a stranger to the business relationship and instead he was, in fact, a party in interest to the relationship. Because both parties acknowledge that being a "stranger" is an element of the tort,

the court will first look to whether the amended complaint properly pled this element and then will look to the substantive definition of it.

Mr. Merritt points out that the Plaintiff does not mention the word "stranger" in the amended complaint. While Mr. Merritt's observation is true, it does not mean that Plaintiff has not met his burden of a well-pleaded complaint. A plaintiff is not required to invoke magic words or a specific turn-of-phrase to successfully plead his complaint. *See Hamilton v. Allen-Bradley Co.*, 244 F.3d 819, 825 (11th Cir. 2001) ("Even though it is true that the original complaint did not contain the specific words 'breach of fiduciary duty' or 'truthful' information, [the plaintiff's] complaint outlined sufficient facts to put [the defendant] on notice of such a claim."). Although the amended complaint does not include the word "stranger," it does allege the facts of the relationships between the Plaintiff and Precision Strip, the Plaintiff and Mr. Merritt, and Mr. Merritt and Precision Strip. These facts are sufficient to notify both the court and the opponent of the tortious interference claim.

The court now looks to the substantive definition of a "stranger" in a tortious interference claim and whether the facts Plaintiff has alleged substantively meet this definition. Under Alabama law, to determine whether a party is a "stranger," the court must inversely determine whether he is a "party in interest" to the business relationship. A "party in interest" includes more than just the actual parties to a contract; "[a] defendant is a party in interest to a relationship if the defendant has any beneficial or economic interest in, or control over, that relationship." *Waddell & Reed, Inc. v. United Invest. Life Ins. Co.*, 875 So. 2d 1143, 1153 (Ala. 2003). Examples of situations where a non-party to a contract was still considered a "party in interest" include:

(1) "[A] father who participated in his son's decisions regarding the son's health-club

business was not a stranger to the relationship between the health club and the plaintiff, who had been discharged from his employment with the health-club." *Id*. at 1154 (citing *Parsons v. Aaron*, 849 So. 2d 932 (Ala. 2002)).

(2) "[P]arties [who] were mutually dependent upon one another [were not strangers] because . . . where a contract would not have been consummated without the participation of a certain party, that party is 'anything but a stranger to the relationship.'" *Id*. (citing *BellSouth Mobility, Inc. v. Cellulink, Inc.*, 814 So. 2d 203 (Ala. 2001)).

(3) A broker of insurance contracts was not a stranger to the relationship between the insurance company and the policyholders because the "interwoven contractual arrangements defined the participant's rights and duties with respect to the other individuals or entities in the relationship." *Id*. at 1159.

According to the amended complaint in this case, the business relationship at issue involved the employment relationship between an employer—Precision Strip—and its employee—the Plaintiff.  Mr. Merritt runs a private trucking company that contracts with Precision Strip and, therefore, works with the Plaintiff, but is not a party to the business relations vis a vis Precision Strip and the Plaintiff. Based upon these facts and the court's review of Alabama law, the court cannot find at this point that Mr. Merritt was a party in interest to Plaintiff's employment relationship. These facts, on their face, show a third party that is not integral to the business relationship as in the examples outlined above. If Mr. Merritt's trucking company were to disappear, the employment relationship between the Plaintiff and Precision Strip would continue, as Plaintiff would merely perform his Transport Supervisor duties by working with other trucking companies. Therefore, the court finds that the amended complaint is not due to be

dismissed on these grounds at this stage in the process. This finding does not preclude a showing that Mr. Merritt was indeed a party in interest at some later stage of litigation.

Mr. Merritt's second argument is that the Plaintiff did not sufficiently allege intentional interference with his employment relationship. Mr. Merritt alleges that no facts in the amended complaint show action taken by Mr. Merritt, arguing that the logic of the amended complaint does not allow the court to draw a reasonable inference that Mr. Merritt intentionally interfered.

To survive a motion to dismiss, the Plaintiff's allegations must permit the court based on judicial experience and common sense to infer more than the mere possibility of misconduct. *Ashcroft v. Iqbal* 556 U.S. 662, 678 (2009). The factual allegations of the amended complaint must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the amended complaint are true even if doubtful in fact. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007).

The amended complaint alleges that Abe Wills informed the Plaintiff that a man approached him at a bonfire and asked if someone knew Jeff Merritt. It further alleges that Mr. Wills told the Plaintiff that the unidentified person told him that Mr. Merritt "was working on getting Plaintiff fired because if the Plaintiff was out of the way, Mormon and Glover would allow Merritt to increase his loads at the Talladega plant." (Doc. 19 ¶ 51, 52). Finally, it alleges that after the Plaintiff's forced resignation, Mr. Merritt's business with Precision Strip increased and Mr. Merritt hired the niece of one of the decision-makers at Precision Strip.

The court finds that the facts in the complaint allow the court to draw a reasonable inference that Mr. Merritt could have tortiously interfered with the Plaintiff's employment contract. The complaint's factual allegations, accepted as true, supply sufficient information

about Mr. Merritt's possible involvement in the Plaintiff's termination to survive the motion to dismiss. Thus, the court finds that the motion to dismiss should be DENIED.

IV. **CONCLUSION**

For the reasons stated above, the court finds that the Defendant's "Motion to Dismiss" is due to be DENIED. The court simultaneously will enter a separate Order to that effect.

DONE and ORDERED this 27th day of November, 2013.

_____
KARON OWEN BOWDRE
CHIEF UNITED STATES DISTRICT JUDGE